The next case for argument, Yinan Ma v. Mayor Garland. Good morning. May it please the court, my name is Mr. He Jiayin, representing petitioner Ms. Ma who was forced to undergo an abortion for violating China's family planning policy. The immigration judge denied her asylum based on two alleged inconsistencies in her testimony before the court and before immigration office, the asylum office. While her case was pending appeal before the Board of Immigration Appeals, she filed a alleging for prior consults in assistance of advice. Specifically, she alleged that when she presented her second claim, which is a religious claim for her being baptized in the U.S. for her active participation in religious activities and the orthodox country condition in China. And her attorney advised her that that's not the reason for political asylum. Ms. Ma, you need to have past persecution first, and that's ineffective assistance. Yes, Mr. Zeng, is it? Yes. Yeah, I think with regard to the question of what the attorney said in that letter, it's not as clear as you're portraying it that the attorney was saying there has to be past persecution. There is a way to read that letter that what he's acknowledging that that is a past persecution is a basis, but that either A, on these facts, there's not a good showing a future persecution, or B, that as a strategic matter, it does not make sense to add in this future persecution claim. I just feel like the letter is not as clear. Clear cut. That's okay. The attorney did not say I made a mistake. The attorney said it needed both past persecution and subjective fear and objective fear. That's the key word is aimed. And also, most of the communications between petitioner and the law office was done between petitioner and the paralegal. If you look at the communications, which is the mirror image of what transpired prior to the merits hearing, the paralegal specifically told petitioner that you must have past persecution first. Otherwise, you cannot do this claim. To that, even if the attorney did not say I made a mistake, BIA should have been able to say, no, this is wrong. Any attorney with basic asylum knowledge should have catched this. This is ineffective assistance of counsel. Instead of acting as an impartial arbiter, BIA manipulated the records by switching the word aimed to war to make otherwise incompetent, ineffective advice look competent. Well, no matter how they said it, do you think there is clear proof of fear for future persecution? Absolutely. In this record? And what is it? What have you got? Absolutely. If you look at the general country conditions regarding religious persecution in China, also petitioner's hometown, Liaoning province, if you look at that, the churches were being closed. The police cars were stationed outside of those, the immediate churches were open. And people were being arrested, being rounded up. And also, we look at the church letter from the U.S. says their brothers and sisters were being arrested. Also, the mother's letter from China says the church looks different. And so much different. We're saying... So is the evidence in the record of future persecution, it's, you're basing this on country conditions evidence? Is that the... Yeah, country conditions and her hometown, and also those objective evidence from the surveillance, those churches, by putting cameras inside of the bathrooms of the churches, and by tearing down, by demolishing those church buildings. And in fact, people, my friend and I, there are so many Christians in China, but not a single one of them can go to the street and start proselytizing without facing imminent arrest. Because proselytizing is illegal in China. Are you putting this whole appeal on the religious issue and not the removal of the IUD? I'm going to address that right away. The substantial evidence in the record does not support the adverse critical finding at all. First of all, I think the government misconstrues the records. When petitioner testified in court, says, I had a pen in my body after the insertion of the IUD. That's very much consistent with her testimony inside the asylum office. Says, my period had been irregular. My friend recommended this doctor. That's very much consistent in alignment. But the government totally left this part out. Says, no, you said you want to have a second child. My client said a second child is just her dream. It's an idea. She did not have a specific plan. So there's no inconsistency there. But it was said in answer to the question, why did you remove it? It says, do you have, are you interested in having this child? That's quite a different, and she said yes, but that's quite different from Was that her reason in fact? I'm sorry? Was that her reason in fact? That's the whole, to have a second, to have a second is one of the secondary thoughts. The primary reason, the underlying reason, the cause of the IUD removal was the pain in her body. And then the office inside, in the asylum office asked her, are you interested in having a second child? She said, of course I'm interested in. My child is growing up. Yeah, I have more time now. So it's a general answer. You said that a reasonable fact finder would be compelled to find that she was credible with these two answers? Absolutely yes. Compelled? You understand that? Compelled. I understand compelled. On the BIA presentation matter of Tuesday, even if the pregnancy was unplanned, it still can lead to finding of past persecution. So it's the intention at the time of the abortion. No, no, no. I'm talking about past persecution now. We're talking about whether a reasonable fact finder would be compelled to find her credible after those two different answers as to why she removed it. I sincerely believe so. If we look at the record in the hall, if we look at her testimony inside before the asylum office about her irregular period, her description of her irregular period, her desire to have it removed so she can physically feel better. So are you saying that both were her reasons? Yes. So when she was asked why did you do it, why didn't she say I have two reasons? She gave the first reason. She said I have this irregular period first. And then the officer asked the follow-up question. He says are you also interested in having a child? She said yes. And then in court she first said I have this pain. And then when she was called by DHS counsel, I think the DHS kept asking the credible theory interview question, which confused her to a great degree because credible theory interview is so fundamentally different from an asylum interview. If a translator translated that into Chinese, it would mean some border interview. That would confuse the petitioner in court. So that's why she was very much confused in the beginning. And I think that, okay, going back to the motion to Redland, I think that BIA's manipulation of records shook the core of one of the founding principles of this country, which is judicial impartiality. This court must reverse the decision of the BIA. All right. Thank you. You've reserved two minutes for rebuttal. Yes. Thank you. Good morning, Your Honors. Counsel. And may it please the Court, my name is Rob Stalzer. I'm here on behalf of the AG. Your Honors, I'd like to start with the asylum claim and then move to the motion, if that's okay with you. Regarding adverse credibility, the problem in these asylum cases, it's not a problem, but a challenge in these cases is knowing who to believe when the evidence is overseas. When people are fleeing often in terror, they can't pick up the evidence along the way. So the immigration judge has to be able to sit down in front of someone and know that they're telling the truth. And the problem with this petitioner's case was she had an asylum interview which was counseled. It began with a recitation of the facts. She said she had the application read back to her in Mandarin. Her counsel at the time even gave a closing statement at that asylum interview. And then at the following immigration court's testimony, the details of her story changed. And they changed in ways that gave the immigration judge the idea that he couldn't know which story was true or if any story was true, because when you have been persecuted, you should be able to tell your story in the same way at least twice in a row. And the pertinent details here involved not merely the difference between the facts, was she planning to have a child, was she having the IUD removed to have a child versus having pain, but even in her statements as to what was affecting her body about the IUD, when she was in front of the immigration judge, she said that it was pain unbearable, so hard she had to take it out. Whereas when she was talking to the asylum officer, she said she had discomfort, and she even contrasted that discomfort with another friend of hers who apparently had it worse and who saw her symptoms of discomfort improve after she had had her IUD. I mean, with regard to describing the situation as extreme pain and describing it as discomfort, to your mind, that's inconsistent? Well, when she talked to the immigration judge, she literally said, I really could not bear it. In other words, unbearable pain. And I do think that is a difference in kind than mere discomfort. And then she turned around and next, of course, they asked, well, was this planned or unplanned? Is the word mere yours or hers? Mine, Your Honor. And then, of course, the next question is, was this intended or not? When she talked to the immigration — excuse me, to the asylum officer during that interview, she described an elaborate thought process. Her son was older now. She thought she might be able to have a young child because her older child was moving on to college. She said she would have the time and energy now, and that's why she determined to take out the IUD, because she wanted the other child. But when we got in front of the immigration judge, the story changed slightly. Now it was an unplanned pregnancy, a wanted pregnancy, but it was unplanned at the time. The reason for the IUD removal was the unbearable pain that she had suffered from it. Could not both reasons be true? Could both reasons be true? Well, there's got to be — Could she both want to remove it because she wants to have another child and because she's having pain? Your Honor, I think both reasons possibly could be true, but we don't know that they are on Petitioner's testimony because when she was confronted with the difference, she didn't say they were both true. She simply said, I don't remember what I told the asylum officer. And that doesn't provide a basis. Well, now how do we know which one is true? You say you don't remember what you said. So again, the immigration judge is sitting there trying to evaluate this evidence, trying to decide, can I believe this or can I not, and decided because of these discrepancies that it had deprived Petitioner's testimony of the ring of truth. Your Honor, on the motion, the Board denied it on two bases. And I don't know that my brother counsel discussed the first basis, and that is simply that compliance with the LASADA factors, the procedural requirements to make an ineffective assistance of counsel claim, are largely required. I know the case law says they have to be substantially complied with. Here, Petitioner didn't attempt to talk to the disciplinary authorities, to alert the disciplinary authorities that there was a problem with their prior counsel because she didn't, according to her affidavit or her letter in support of the motion, she didn't want to cause them trouble. She thought this could be settled amicably. But the whole point, and this is the – and the Board wrote about this. The whole point of the bar notification requirement is that the disciplinary authorities, they're the ones in a position to tell whether there's a pattern of misconduct going on. Petitioner herself wouldn't know that. Petitioner's counsel wouldn't necessarily know that. But the bar would. If they saw these over time, well, then they could potentially take corrective action. Is that the only portion of LASADA that was not complied with, this notification of disciplinary authorities? It's the only one that the Board ruled had not been fulfilled, Your Honor. And – but it is – it is a requirement, and the Board expanded on that in matter of Melgar. It's in matter of LASADA, of course. They expanded on it in matter of Melgar. In the case of an attorney saying they – they didn't want to file the disciplinary authorities because they didn't want to cause trouble. They just wanted to get going with the case. And the Board said no. The whole point of the – this requirement is that somebody at the disciplinary authorities should know so there can be a clear history to determine whether a pattern of misconduct has occurred. So that's one reason that the motion was appropriately denied by the Board. The second one of the Board was she didn't show prejudice. And this, of course, turns on the question of the evidence she offered in support of her new claim to face religious persecution that her prior attorney discounted and told her, no, we've got a good case on the family planning. We're going to go forward on that one. I disagree with my brother counsel about that letter. I know we're talking about is it an and or is it an or. I think that sentence can be read to that attorney saying, well, there was no past persecution here, because – and there is. She doesn't allege to have faced religious persecution in the past. So she would have to then show a subjectively genuine and objectively reasonable well-founded fear of future persecution. And – But would you agree, though, that the letter as worded is ambiguous? Or do you –  I concede that it would be ambiguous, Your Honor, simply because it's a stilted sentence and Petitioner's counsel I don't think was taking particular care for it. But it's clear that he knew what her claim was, right? He writes about the future claim of Christian – of persecution on her basis for Christianity. So it's not – as an immigration practitioner, I think he was focused on the fact that she didn't show and couldn't plead past persecution on that claim. So she'd end up having to show either the subjectively genuine and objectively reasonable future. Is it enough that she did practice her religion, or do the Chinese authorities have to be aware that she did? I don't know that they necessarily have to be aware. That certainly could help. But in this case, the major problem, I think, with the evidence she offered was it was too generalized. Like, there's not even a statement here that she's going to join a congregation in China that has faced previous acts, right? That would be, oh, I belong to that church and they're in trouble. That would be evidence. But instead, there's this broad, well, I'm a Christian and I want to go back to China. There are lots of Christians in China. Some of them are persecuted, but not all of them. And because of that speculation, again, she couldn't demonstrate that she would be prejudiced by her attorney, her prior attorney, taking the tactical decision to go for the – What was the IJ's reason for rejecting her? The immigration judge didn't have a motion to remand. He didn't at all? No. So this is just a reason for a remand? Yes. Yes, Your Honor. As a result – excuse me. As a result, Your Honors, and in light of the standard of review here, I think the immigration judge's decision on the adverse credibility determination is supported by substantial evidence, and I think there's no indication that the Board abused its discretion in the denial of that motion to remand. Well, when they turn down the remand, they say anything? Yes. The failure to comply with one of the Lusada factors. No, the Lusada. And additionally, because, yes, Your Honor, they didn't show prejudice as to the religious – Didn't show prejudice? Yes. Because she hadn't offered enough evidence to show a particularized fear, she couldn't demonstrate that that application would make a difference to the outcome. I'm sorry, just one more follow-up on that. Your adversary referenced, I guess, country conditions evidence in the record. There's no – your position is that it's lacking particularized evidence as to her. Is that the – Right. We need to have a reasonable possibility that she's going to face this persecution that she's complaining of. There was an IMF report. There was some news report – excuse me, not an IMF – an International Religious Freedom report, and there was some news articles, and then there were some articles from – or some letters from people in her town, but nothing that suggested she was going to join one of these congregations that faces harm from the government in China. And that's sort of the thing. Rather than simply, I am a Christian and therefore I have a fear, there has to be something more particularized than that speculation in order to qualify. And that's why there was no prejudice, Your Honor. Thank you very much for your time. Thank you. Good morning. On the Supreme Court present decision, I.S. versus Cardoza, Fonseca, petitioner only needs to play – needs to prove she has only 10 percent chance of being persecuted. That being said, the prejudice caused by leaving out an entire asylum claim based on religion so as to bring possible future persecution to the petitioner, that's prejudice in its extreme format. This is like a doctor negligently amputated one of the patient's legs, says, oh, don't worry about it, sir, you still have one strong leg left, refers to the family planning claim. The second grounds, Madam Lozada does not require a bar complaint, must be filed. It's just want to see a reason, what is the reason. In this case, the petitioner explained that she wants to take a peaceful approach. She did not want to bring back record to her prior counsel. She said she wanted to resolve this in a non-confrontational manner. That's already satisfied as a matter of Lozada requirement. The last thing is regarding the two alleged inconsistent testimonies. We are talking about two different transmitters, one in asylum office, one in prison, two different persons asking the questions. Also, we added the confusion caused by DHS counselor using the word credible field interview five times, which there is no such interview ever took place. That definitely contributed to the confusion of the petitioner's testimony. I respectfully ask that this court reverse the BIA's decision. Thank you. All right. Thank you. Thank you both. We'll take the case under advisement.